# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GEORGE DUNBAR PREWITT, JR.,

        *Plaintiff,*

   v.

DENIS R. MCDONOUGH, *Secretary of the U.S. Department of Veterans Affairs*, *et al.,*

        *Defendants.*

Civil Action No. 21-2243 (RDM)

## MEMORANDUM OPINION

Plaintiff George Dunbar Prewitt, Jr., proceeding *pro se*, brings this action against the Secretary of the Department of Veterans Affairs and the United States (collectively, "Defendants") to challenge (1) the constitutionality of the statutory procedures for adjudicating veterans' disability claims, and (2) a decision by the Army Board for Correction of Military Records ("ABCMR") regarding the circumstances of his separation from the military in 1970. *See* Dkt. 18 at 17–18 (Am. Compl. ¶¶ 34–35). Wounded in the Vietnam War, Prewitt maintains that the extent of his injuries warranted consideration for military disability retirement and that the benefits he received from the Department of Veterans Affairs ("VA") should have been calculated based on a higher disability rating than the 30% rating that he received. *See Prewitt v. McDonough*, 633 F. Supp. 3d 195, 198 (D.D.C. 2022) ("*Prewitt I*"); Dkt. 1 at 3–7 (Compl. ¶¶ 5–13); Dkt. 23-1 at 11 (citing Gov't Motion to Remand, Dkt. 18 at 2, *Prewitt v. United States*, No. 22-cv-1673 (Fed. Cl. Feb. 3, 2023)).

Prewitt's efforts to remedy the latter issue have resulted in "a long and[,] from his perspective[,] unsatisfactory journey through the VA benefits-adjudication process." *Prewitt,*

633 F. Supp. 3d at 198.  The latest episode in that journey is this lawsuit—or, more precisely, the

most recent iteration of this lawsuit—in which Plaintiff challenges the constitutionality of the

VA benefits-adjudication process.  After the Court granted in part and denied in part Defendants'

motion to dismiss Plaintiff's original complaint, *see Prewitt I*"'" at 209, Plaintiff filed an

amended complaint, Dkt. 18.  In *Prewitt I*, the Court held that it has jurisdiction to consider

Plaintiff's facial challenges to the constitutionality of the statutory provisions to the extent those

challenges do "not require courts to inquire into or to pass judgment on VA decisions regarding

[his] benefit requests," *id.* at 204, but lacks jurisdiction to consider his challenges to the decisions

of the VA, the Court of Appeals for Veterans Claims ("CAVC"), or the Federal Circuit, *id.* at

207.  The Court also held that Plaintiff's original complaint failed to include the challenges that

Plaintiff first raised in his opposition brief to Congress's establishment of a non-Article III

court—that is, the CAVC—to consider his administrative appeal and to Congress's failure to

provide those challenging the denial of VA benefits with a right to a jury trial.  *Id.* at 208–09.

Liberally construed, Plaintiff's amended complaint asserts five claims:  He alleges that

the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), is facially

unconstitutional because (1) it assigned judicial authority to a non-Article III court, (2) it

deprives veterans seeking to challenge the denial benefits with their Seventh Amendment right to

trial by a jury, (3) it unconstitutionally discriminates against veterans, who are predominantly

non-white and male, of the same right to bring challenges in federal district court that is afforded

to Social Security disability claimants, who are predominantly female, and (4) violates the

appointments clause of the Constitution.  *See generally* Dkt. 18.  Recently, Plaintiff has also

engaged in efforts to remedy the Army's failure to consider him for military disability

retirement.  Those efforts resulted in the evaluation of Plaintiff for medical disability retirement

by the ABCMR and a determination that disability processing was not warranted.  Dkt. 23-1 at 12; Gov't Motion to Remand at 2–3, *Prewitt v. United States*, No. 22-cv-1673 (Fed. Cl. Feb. 3, 2023), Dkt. 18.  In his final claim, (5) Plaintiff now seeks an order from this Court declaring that the ABCMR decision was "contrary to law" in violation of the Administrative Procedure Act ("APA").  Dkt. 18 at 18 (Am. Compl. ¶ 35).

After Defendants moved to dismiss Plaintiff's amended complaint, Dkt, 20, Plaintiff contacted Defendants to clarify that he intended to include a challenge to the AMCMR decision in that complaint.  Dkt. 23-1 at 13-14.  Although the amended complaint is far from clear, Defendants agreed to construe the complaint in that manner (as the Court will do as well), and Defendants then filed an amended motion to dismiss.  *Id.*  That motion is now before the Court.[1]  For the reasons explained below, the Court concludes that each of Prewitt's claims fails as a matter of law, even when he is given "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

The Court will, accordingly, **GRANT** Defendants' motion to dismiss.

# I.

The Court begins its analysis with Prewitt's Seventh Amendment and Article III claims, which are best considered together.  He argues that the VA's system for adjudicating veterans' benefit claims is unconstitutional because the relevant proceedings take place before a non-

---

[1]  After the Supreme Court granted certiorari in *SEC v. Jarkesy*, 143 S. Ct. 2688 (2023), this Court stayed proceedings in this case in order to obtain the benefit of the Supreme Court's analysis of a potentially related issue.  Min. Order (Jan. 21, 2024).  After the Supreme Court issued its decision in *Jarkesy*, the parties submitted their views regarding the implications, if any, of that decision.  See Dkt. 31, Dkt. 32.

Article III tribunal, where no jury trial is available.  Dkt. 18 at 17–18 (Am. Compl. ¶¶ 34(a) & (c)).

To receive benefits from the VA for an injury incurred while on active duty, a veteran must first file a claim with the VA.  38 U.S.C. §§ 301(b), 1110; 38 C.F.R. § 3.155(b), (d).  VA regional offices receive veterans' claims and render initial decisions on whether to grant or deny benefits for each claim.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011).  If a veteran disagrees with the initial resolution of his claim, he can file a notice of disagreement with the Board of Veterans' Appeals (the "Board" or "BVA"), which then conducts a *de novo* review of the claim.  38 U.S.C. § 7105(a), (d); *see Thornton v. United States*, 281 F. Supp. 3d 116, 118 (D.D.C. 2017).  "The Board is a body within the VA that makes the agency's final decision in cases appealed to it."  *Henderson*, 562 U.S. at 431.

"Before 1988, a veteran whose claim was rejected by the VA was generally unable to obtain further review."  *Id.* (citing 38 U.S.C. § 211(a) (1988)).  But in 1988, Congress enacted the Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1988), which created the Court of Appeals for Veterans Claims.  A veteran unsatisfied with the Board's decision regarding his disability claim can appeal the Board's decision to the CAVC, which has exclusive jurisdiction to review decisions of the Board.  38 U.S.C. §§ 7251, 7252(a).  If still unsatisfied, a veteran can appeal certain CAVC decisions to the Court of Appeals for the Federal Circuit, *id.* § 7292(c)–(d), and judgments of the Federal Circuit, in turn, are "subject to review by the Supreme Court upon [issuance of a writ of] certiorari," *id.* § 7292(c).

Prewitt contends that this process violates Article III and the Seventh Amendment because it does not afford him the right to adjudicate his claim before a jury in an Article III court.  *See* Dkt. 18 at 17–18 (Am. Compl. ¶¶ 34(a) & (c)).  "The Constitution prohibits Congress

from 'withdraw[ing] from judicial cognizance any matter which, from its nature, is subject to a suit at the common law.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2131 (2024) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856)). Consistent with this principle, the Supreme Court has "repeatedly explained that matters concerning private rights may not be removed from Article III courts," and has explained that, in making that decision, courts should ask whether the claim "'is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" *Id.* at 2132 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)) (internal quotation marks omitted).

The Seventh Amendment, in turn, "preserves the 'right of trial by jury' in 'Suits at common law, where the value in controversy shall exceed twenty dollars.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 344–45, (2018) (quoting U.S. Const. amend. VII). To challenge an administrative adjudication under the Seventh Amendment, a litigant must generally show (1) that the proceeding before the agency implicates the Seventh Amendment, and (2) that "the 'public rights' exception to Article III jurisdiction" does not apply. *Jarkesy*, 144 S. Ct. at 2127; *see also Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989); *Tull v. United States*, 481 U.S. 412 (1987). "[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal," however, "'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States Energy Servs.*, 584 U.S. at 345 (quoting *Granfinanciera*, 492 U.S. at 53-54).

Defendants posit that the Court need not reach the first issue because the second clearly forecloses Plaintiff's Seventh Amendment claim. In their view, "the VA benefits system 'falls squarely' within the category of 'public rights' cases that Congress may assign to a non-Article III tribunal." Dkt. 23-1 at 22 (citation omitted). As a result, according to Defendants, there is no

Article III or Seventh Amendment problem with the adjudicatory process for veterans' disability claims, and thus Plaintiff's Article III and Seventh Amendment claims must be dismissed.  The Court agrees.

The Supreme Court recently provided guidance on the scope of the "'public rights' exception to Article III jurisdiction."  In *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), the Court considered "whether the Seventh Amendment entitles a defendant to a jury trial when the [Securities and Exchange Commission] seeks civil penalties against him for securities fraud." *Id.* at 2127.  In resolving that question, the Court explained that its decisions have repeatedly recognized that "matters concerning . . . 'public rights' . . . 'historically could have been determined exclusively by [the executive and the legislative] branches,' even when they were 'presented in such a form that the judicial power [w]as capable of acting on them.'"  *Id.* at 2232 (quoting *Murray's Lessee*, 18 How. at 84) (alterations in original).  Although the precise contours of the public rights exception is not neatly defined, *see id.* at 2133 ("The Court 'has not "definitively explained" the distinction between public and private rights,' and . . . do[es] not claim to do so today." (quoting *Oil States*, 584 U.S. at 334)), the Court observed long ago that "the granting of public benefits, such as payments to veterans [and] pensions," falls squarely within the exception, *id.* (citing *Crowell v. Benson*, 285 U.S. 22, 50–51 (1932) ("Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals" such matters as those involving "payments to veterans.")).  The Supreme Court's decision in *Jarkesy* reaffirms this settled (and sensible) proposition.

Prewitt's Article III and Seventh Amendment claims challenge the VA's administrative scheme for adjudicating claims arising from the agency's payment of disability benefits to veterans.  That administrative adjudicatory process involves public rights.  As a result, Congress

committed no constitutional error when it assigned the adjudication of those claims to the Board and to the CAVC, even though they are both Article I entities and even though neither does (nor could) provide claimants with a right to trial by jury.

Accordingly, the Court will dismiss Plaintiff's Article III and Seventh Amendment claims.

## II.

The Court next considers Plaintiff's contention that Congress violated the appointments clause of Article II when it established the Board. In particular, Plaintiff argues that the Board is unconstitutionally structured because its members "other than the Chairman (and including the Vice Chairman) [are] appointed by the Secretary [of the VA], with the approval of the President, based upon recommendations of the Chairman." 38 U.S.C. § 7101A(a)(1). The appointments clause, however, mandates that "[o]nly the President, with the advice and consent of the Senate, can appoint noninferior officers, called '"principal"' officers as shorthand." *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021). Because the Board members are, in Plaintiff's view, principal officers and because its members are not confirmed by the Senate, he maintains that the Board's structure violates appointments clause. The Court disagrees.[2]

---

[2] Prewitt's claim is premised on the notion that the Board is comprised of "officers" as the term is used in the appointments clause. Defendants do not argue to the contrary. The Court need not reach this threshold issue, however, because even assuming that the Board is comprised of "officers," such that the appointments clause applies to them, the Board's structure nonetheless complies with Article II. *See also Lucia v. SEC*, 585 U.S. 237, 248 (2018) (noting that the SEC's Administrative Law Judges ("ALJs") "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges," and concluding that, as a result, ALJs are "officers" for appointment clause purposes); *Freytag v. CIR*, 501 U.S. 868, 881–82 (1991) (holding that special trial judges "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders," and in so doing exercise "significant discretion" and authority, which renders them "officers" under the appointment clause).

Although the Supreme Court has not "set forth an exclusive criterion for distinguishing between principal and inferior officers for [a]ppointments [c]lause purposes," *Edmond v. United States*, 520 U.S. 651, 661 (1997), it has emphasized that a key feature of an inferior officer is the existence of a superior officer, *id.* at 662–63. "An inferior officer must be 'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *Arthrex*, 594 U.S. at 13 (quoting *Edmond*, 520 U.S. at 663). "It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude." *Edmond*, 520 U.S. at 662–63. An inferior officer cannot "render a final decision on behalf of the United States without any . . . review by their nominal supervisor or any other principal officer in the Executive Branch." *Arthrex*, 594 U.S. at 14.

Applying this distinction, the Supreme Court held in *Edmond v. United States*, 520 U.S. 651 (1997), that Coast Guard Court of Criminal Appeals ("CGCCA") judges, appointed by the Secretary of Transportation, were inferior officers. As the Court explained in *Edmond*, and reaffirmed in *United States v. Arthrex, Inc*., 594 U.S. 1 (2021), "the [CGCCA] judges were inferior officers because they were effectively supervised by a combination of Presidentially nominated and Senate confirmed officers in the Executive Branch," *id.* at 13. One such officer was the Judge Advocate General, who provided administrative oversight. He prescribed rules of procedure, formulated policies for court-martial cases, and could also "remove a Court of Criminal Appeals judge from his judicial assignment without cause." *Edmond*, 520 U.S. at 664. In addition, and more significantly, the Court noted that the Court of Appeals for the Armed Forces, an executive tribunal, exercised substantive oversight over the CGCCA judges. The Court of Appeals of the Armed Forces "could review the [CGCCA] judges' decisions under a *de*

*novo* standard for legal issues and a deferential standard for factual issues," *Arthrex*, 594 U.S. at

13–14 (citing *Edmond*, 520 U.S. at 665).  As a result, "the judges of the [Coast Guard] Court of

Criminal Appeals ha[d] no power to render a final decision on behalf of the United States unless

permitted to do so by other Executive officers."  *Edmond*, 520 U.S. at 665.

   Two decades later, the Supreme Court applied the same test in *United States v. Arthrex,*

*Inc.*, 594 U.S. 1 (2021), but held, in contrast, that the Administrative Patent Judges ("APJs") who

make up the Patent Trial and Appeal Board ("PTAB") and who preside over adversarial

proceedings in which the validity of an existing patent is challenged were principal officers.  As

the Court explained, "APJs have the 'power to render a final decision on behalf of the United

States' without any . . . review by their nominal superior or any other principal officer in the

Executive Branch."  *Id.* at 14 (quoting *Edmond*, 594 U.S. at 665).  The "administrative

oversight" that the PTO Director has over the APJs was insufficient, moreover, because the PTO

Director does not have the authority to review the specific decisions of the PTAB.  To be sure,

the Director "fixes the rate of pay for APJs, controls the decision whether to institute [a] . . .

review" of a patent, "selects the APJs to reconsider the validity of the patent," "promulgates

regulations [that] review, issues prospective guidance on patentability issues, and designates past

PTAB decisions as 'precedential' for future panels."  *Id.*  But the PTO Director was not "the boss

. . . when it comes to the one thing that makes the APJs officers exercis[e] 'significant authority'

in the first place—their power to issue decisions on patentability."  *Id.* (citation omitted).

   Relying on these precedents, Defendants contend that the Board is composed of inferior

officers because its work of rendering decisions on veterans' disability benefits is supervised by

the CAVC, an Article I court.  The Court agrees.  Notably, the CAVA is situated in the executive

branch, and its judges are "appointed by the President, by and with the advice and consent of the

Senate." 38 U.S.C. §§ 7251, 7253. In addition, it is undisputed that the CAVC substantively

reviews the Board's decisions, and it is the only body with the authority to do so. *See* 38 U.S.C.

§ 7252(a) ("The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review

decisions of the Board of Veterans' Appeals" and that the CAVC "shall have power to affirm,

modify, or reverse a decision of the Board or to remand the matter, as appropriate."). The

standard of review that the CAVC applies in reviewing the Board's decisions, moreover, mirrors

that applied by the Court of Appeals for the Armed Forces, the executive tribunal that the

Supreme Court relied upon in *Edmond* to conclude that the CGCCA is subject to meaningful

supervision. The CAVC, like the Court of Appeals for the Armed Forces in *Edmond*, "reviews

the [Board's] decisions under a de novo standard for legal issues and a deferential standard for

factual issues." *Arthrex*, 594 U.S. at 14; *see also Edmond*, 520 U.S. at 664–65; 38 U.S.C.

§ 7261(a) (setting forth the standard by which the CAVC reviews the Board's decisions);

*Henderson*, 562 U.S. at 432 n.2 (describing the CAVC's scope of review as "similar to that of an

Article III court reviewing agency action under the Administrative Procedure Act"). Because the

CAVC acts as a substantive check on the Board's decision-making authority, the Board is

supervised—that is, its members are inferior to other officers—in the exercise of its "significant

authority." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976).

 In addition to the substantive oversight exercised by the CAVC, the Board is also

administratively overseen by its Chairman, who is appointed by the President with the advice

and consent of the Senate. 38 U.S.C. § 7101(b). The Chairman has numerous responsibilities,

many of which mirror those of the PTO Director. *See Prewitt v. McDonough*, 36 Vet. App. 1,

15–16 (CAVC 2022) (Jaquith, J., concurring) (noting that the Chairman "establishes

performance standards for Board members," "determines whether Board members are awarded

performance incentives," "assigns proceedings instituted before the Board to an individual Board member or a panel of board members," and can "order reconsideration of each Board decision—'on the Chairman's initiative or upon motion of the claimant'—thereby stopping the decision from becoming final" (quoting 38 U.S.C. § 7103)). The fact that the Board is overseen substantively by the CAVC and administratively by its Chairman leaves little doubt that its members are not principal officers of the United States, who may be appointed only by the President with the advice and consent of the Senate. *See Edmond*, 594 U.S. at 665. Moreover, because those members (other than the Chairman) are appointed by the Secretary of Veterans Affairs, who is the "Head of [a] Department[]," their appointment as inferior officers poses no constitutional difficulty. *See* U.S. Const., Art. II, Sec. 2, cl. 2.

Notwithstanding this settled law, Plaintiff maintains that members of the Board are not subject to executive branch oversight because the CAVC should be treated as an Article III court, and the Supreme Court has held that "[r]eview outside Article II," i.e., an appeal to an Article III court, "cannot provide the necessary supervision" to satisfy the appointment clause. *Arthrex*, 594 U.S. at 17; *see also Edmond*, 520 U.S. at 665–66 (noting that a "significant distinction[] between [the] Tax Court judges [who the Court had implied were principal officers] and Court of Criminal Appeal judges [who the Court was holding were inferior officers]" was that "there is no Executive Branch tribunal comparable to the Court of Appeals for the Armed Forces that reviews the work of the Tax Court; its decisions are appealable only to courts of the Third Branch").

In pressing this argument, Plaintiff acknowledges that the Supreme Court has described the relationship between the Board and the CAVC as one that complies with the appointments clause because the CAVC is an Article I court, *see Arthrex*, 594 U.S. at 20 ("[W]hile the Board of Veterans' Appeals does make the final decision within the Department of Veterans Affairs, its

11

decisions are reviewed by he Court of Appeals for Veterans Claims, an Executive Branch entity." (citations omitted)); *see also Henderson*, 562 U.S. at 431–32 (describing the CAVC as "an Article I tribunal" that is "authorized . . . to review Board decisions adverse to veterans"). He argues, however, that this sentence in *Arthrex* was mere dicta that does not bind this Court, and he urges this Court to consider, instead, the "legislative history of the law creating the CAVC" because that history shows that Congress "expressly rejected the placement of the CAVC in the Executive Branch."  Dkt. 27 at 12.

But even if the Court were to accept Prewitt's dubious premise that it can (and should) ignore the Supreme Court's discussion of the Board in *Arthrex*, Prewitt's reliance on legislative history faces an insurmountable obstacle: the statutory text and structure of the VJRA.  *Cf. Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 350 (D.C. Cir. 2019) ("Yet when the statutory text is clear, legislative history should not be used to muddy its meaning." (citing *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)).  The VJRA, which created the CAVC, states unequivocally that the CAVC is an Article I court—not an Article III court: "There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Appeals for Veterans Claims."  38 U.S.C. § 7251.  Nor is there anything in the structure of the CAVC that suggests that Congress intended to place the CAVC within the third branch.  For example, rather than giving CAVC judges life tenure, a protection the Constitution mandates for Article III judges, Congress specified that "[t]he term of office of the judges of the Court of Appeals for Veterans Claims shall be 15 years."  *Id.* § 7253(c).  Moreover, unlike an Article III judge who can only be removed if impeached by the Senate, CAVC judges can be removed by the President for cause.  *See id.* § 7253(f) ("A judge of the Court may be removed from office by the President on grounds of misconduct, neglect of

duty, engaging in the practice of law, or violating section 7255(c) of this title.  A judge of the Court may not be removed from office by the President on any other ground.").[3]

Of course, "the Supreme Court has cautioned that 'congressional pronouncements are not dispositive' of the status of a 'governmental entity for purposes of separation of powers analysis under the Constitution.'"  *Crim v. CIR*, 66 F.4th 999, 1001 (D.C. Cir. 2023) (quoting *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 51 (2015)).  Congress cannot assign an adjudicatory function that the Constitution assigns to an Article III court to a non-Article III entity.  But there is no reason to conclude that Congress has done so here.  To the contrary, as explained above, the adjudication of claims arising from the payment of disability benefits to veterans—which is the adjudicatory function that the Board fulfills—involves the determination of public rights.  And the "case law makes plain" that "Congress may assign to administrative agencies" the adjudication of "the class of 'public rights.'"  *Granfinanciera*, 492 U.S. at 53.  "Congress undisputedly exercised that option when it initially established [the CAVC] as an Executive Branch agency rather than an Article III tribunal."  *Kuretski v. CIR*, 755 F.3d 929,  940 (D.C. Cir. 2014).  The Court thus rejects Prewitt's contention that the oft-repeated proposition that the CAVC is a non-Article III tribunal is incorrect as a matter of law.

Because the Board's authority to decide veterans' disability benefits claims is reviewed and overseen by the CAVC, an executive branch authority, and because the Board members are

---

[3] That is not to say that there are no similarities between the CAVC and Article III courts.  CAVC judges, for example, are paid the same salary as a district court judges, *see* 38 U.S.C. § 7253(e), and they can take "senior status" in a manner similar to Article III judges, *see* 28 U.S.C. § 371; 38 U.S.C. § 7257; *see also Prewitt*, 36 Vet. App. at 17–19 (Jaquith, J., concurring) (enumerating the various ways in which the CAVC's internal procedures mimic those of the federal judiciary).  But these similarities are administrative in nature; they do not reflect the constitutional requirements placed on Article III judges.  As a result, they shed no meaningful light on the CAVC's place within the separation of powers.

subject to the administrative supervision of the Chairman, who also exercises executive authority, the Court also concludes that the Board is composed of inferior officers appointed in a manner consistent with the appointments clause.

Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's appointments clause claim.

## III.

Plaintiff's final set of constitutional claims allege that the process for adjudicating veterans' disability benefits claims violates the Fifth Amendment's due process and equal protection clauses. Dkt. 18 at 13, 17–18 (Am. Compl. ¶¶ 23, 34(b)); Dkt. 27 at 7. In support of these claims, Plaintiff advances two theories—neither of which is availing.

Plaintiff's first theory posits that the VJRA impairs veterans' First Amendment right "to petition the Government for a redress of grievances," U.S. Const. amend. I, by limiting the courts in which they can seek relief. As explained above, under the VJRA, claimants can appeal Board decisions to one non-Article III tribunal (the CAVC) and to one Article III court (the Federal Circuit). 38 U.S.C. §§ 7251, 7252(a), 7292(c). In contrast, Plaintiffs observes, individuals seeking Social Security benefits can obtain review in "nation-wide Article III district courts." Dkt. 18 at 17 (Am. Compl. ¶ 34(b)). Because the VJRA limits the forums in which a veteran can challenge an adverse claims decision, Plaintiff maintains that the Act creates "a statutory classification [that] significantly interferes with the exercise of a fundamental right," and "it cannot be upheld unless" the scheme withstands strict scrutiny. Dkt. 27 at 7 (quoting *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978)).

"The right of access to courts is, without question, 'an aspect of the First Amendment right to petition the government.'" *Patchak v. Jewell*, 828 F.3d 995, 1004 (D.C. Cir. 2016)

(quoting *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011)). And individuals may sue to vindicate that right by claiming that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002); *see, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (prisoner suing for access to a law library to aid in preparing a case); *Boddie v. Connecticut*, 401 U.S. 371, 372 (1971) (challenging a divorce filing fee that a plaintiff could not afford to pay). Or a plaintiff can bring a "backward looking claim" in which he or she claims that "the government 'cause[d] the loss or inadequate settlement of a meritorious case' or 'the loss of an opportunity to sue.'" *Mark v. Republic of the Sudan*, 77 F.4th 892, 898 (D.C. Cir. 2023) (quoting *Christopher*, 536 U.S. at 413). Plaintiff, however, alleges neither sort of right-to-access claim in his amended complaint.

Instead, he alleges only that the VJRA "denies [veterans] their First Amendment right of petition to access nationwide Article III courts and forces dissatisfied litigants into one Article I court followed by an appeal to one Article III court." Dkt. 18 at 16 (Am. Compl. ¶ 30) (emphasis omitted). The current system is, in Plaintiff's view, an "administrative agency thicket" that is difficult to "traverse" and less desirable than direct judicial review. *Id.* at 14 (Am. Compl. ¶ 25). But the right to petition the government "is not absolute," and litigants do not have an unqualified right to bring any claim to any federal court. *Patchak*, 828 F.3d at 1004. In other words, the "right to petition the government" does not guarantee a plaintiff a right to bring a claim in any forum they prefer; to the contrary, "the right to access federal courts is subject to Congress's Article III power to define and limit the jurisdiction of the inferior courts of the United States." *Id.* "Congress may withhold jurisdiction from inferior federal courts 'in the exact degrees and character which to Congress may seem proper for the public good.'" *Id.*

(quoting *Palmore v. United States*, 411 U.S. 389, 401 (1973)).  "The right to access courts does not constrain" "Congress['s] long exercised . . . plenary authority to set the jurisdictional reach of the federal courts."  *Mark*, 77 F.4th at 898.  Beyond the Seventh Amendment claim that the Court has already dismissed, Plaintiff makes no argument why Congress lacks discretion to assign the adjudication of veterans' disability claims to an Article I tribunal and to then limit the ability of veterans to appeal their claims to a specific Article III court.  In short, Plaintiff has failed to state a petition-clause-based First Amendment claim or a Fifth Amendment claim premised on the forum limitations in the statute.

Prewitt does, however, assert a different Fifth Amendment claim, which alleges that the VJRA violates both the due process and equal protection clauses because the "benefits system" that the VJRA establishes "discriminates on the basis of gender, and possibly race."  Dkt. 18 at 15 (Am. Compl. ¶ 29).  In particular, Plaintiff alleges that the VJRA's funneling of veterans' disability claims to an Article I tribunal instead of an Article III court treats veterans—who Prewitt alleges are disproportionately male and nonwhite as compared to the rest of the population—worse than other recipients of federal benefits, such as Social Security beneficiaries who Prewitt alleges are predominately female and who can obtain review in "nation-wide Article III district courts."  *Id.* at 17–18 (Am. Compl. ¶ 34(b)).

The first step in evaluating this claim requires the Court to ascertain the applicable level of scrutiny.  Although all laws that classify individuals differently because of certain characteristics are subject (at a minimum) to rational basis review, laws that intentionally discriminate based on a protected classification require a higher level of scrutiny.  Here, Plaintiff alleges only that the VJRA has (or might have) a disparate impact by creating an adjudicatory system that is disproportionally used by nonwhite, male claimants; he does not allege that the

VJRA was enacted in an effort to treat nonwhite, male recipient of public benefits differently than other individuals. *See Porter v. U.S. Capitol Police Bd.*, 816 F. Supp. 2d 1, 6 (D.D.C. 2011) ("The Supreme Court has made clear that a showing of disparate impact alone is not sufficient to prevail on an equal-protection challenge." (citing *Washington v. Davis*, 426 U.S. 229, 238–239 (1976))); *2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 679 (D.C. Cir. 2006) ("[T]he Supreme Court has barred constitutional disparate impact claims."); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (explaining that to find a statute unconstitutional on equal-protection grounds, a court must find that the legislature "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group"). Nor does he allege any facts that would support a plausible inference that Congress acted with a discriminatory purpose—that is, that Congress limited judicial review of Board decisions (or CAVC decisions) to the Federal Circuit for the purpose of discriminating against a protected class. *See Davis*, 426 U.S. at 238–239. As a result, the VJRA is subject to only rational basis review.

Under rational basis review, the Court considers whether a law's differential treatment of individuals violates the equal protection clause because it is not rationally related to a legitimate government purpose. *See Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. District of Columbia*, 45 F.4th 954, 958 (D.C. Cir. 2022). Rational basis review does not impose a high bar on the government, and under rational-basis review, legislation carries "a strong presumption of constitutionality." *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 126 (1999). "Absent irrationality, a law does not fail rational-basis review for being over- or under-inclusive," *Fraternal Ord. of Police*, 45 F.4th at 958 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 16–17 (1992)), and "a challenger must negate 'every

conceivable basis' that might support the distinction." *Id.* (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 314–15 (1993)).  Here, Plaintiff does not allege that the VJRA lacks a rational basis, nor does he argue as much in his opposition to the Defendants' motion to dismiss.  That alone is a sufficient basis for the Court to conclude that his equal protection clause claim fails as a matter of law.

But even excusing this shortcoming, Defendants have proffered a rational basis for Congress's decision to assign the adjudication of veterans' disability benefits claims to an administrative tribunal: the development of a specialized body of experts to resolve the unique issues that arise in the context of veterans' disability benefit claims.  *See* H.R. Rep. No. 100-963, at 28 (1988), as reprinted in 1988 U.S.C.C.A.N. 5782, 5810 ("The committee believes that it is strongly desirable to avoid the possible disruption of VA benefit administration which could arise from conflicting opinions on the same subject due to the availability of review in the 12 Federal Circuits or the 94 Federal Districts.  the committee also believes that the subject of veteran benefits rules and policies is one that is well suited to a court which has been vested with other types of specialized jurisdiction."); S. Rep. No. 100-418, at 55, 60 (1988) (noting that "the Committee is keenly aware of the criticism of the experience with court review of disability claims under the Social Security Act, and the Committee wishe[d] to prevent such a situation from arising in the area of VA claims cases;" therefore, the Committee limited the judicial review under the act "to afford the maximum possible deference to the BVA's expertise as an arbiter of the specialized types of factual issues that arise in the context of claims for VA benefits, while still recognizing and providing for the possibility of error in BVA factual determinations, and the need, however seldom it may arise, for some avenue of redress against glaring errors").  Plaintiff fails to offer any response to this showing or otherwise to explain why

18

this justification for the specific procedures that Congress adopted for resolving veterans' claims is irrational.  Nothing in the Constitution requires Congress to apply a uniform set of rules of judicial review to all benefit programs.

Accordingly, the Court will dismiss Plaintiff's Fifth Amendment due process and equal protection clause claims.

## IV.

Plaintiff's final claim is not a constitutional claim.  Instead, he asks this Court to vacate the ABCMR's decision regarding his eligibility for disability retirement because it is contrary to law in violation of the APA.  Dkt. 18 at 18, 20 (Am. Compl. ¶¶ 35, 38).  Defendants, in turn, ask the Court to dismiss this claim because Plaintiff has another case pending before the Court of Federal Claims in which he has asserted essentially the same claim.  Dkt. 23-1 at 27. Accordingly, "[u]nder the first-to-file rule," Defendants argue that Plaintiff's ARBA "decision in this case should be dismissed."  *Id.* at 28.  The Court agrees.

As a "general principle," parties should aim "to avoid duplicative litigation" between federal district courts.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, (1976).  "[W]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first," *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted), provided that "equitable considerations" do not weigh in favor of an alternative outcome, *see Handy v. Shaw*, 325 F.3d 346, 350 (D.C. Cir. 2003); *Columbia Plaza Corp. v. Sec. Nat. Bank*, 525 F.2d 620, 628 (D.C. Cir. 1975).  To that end, "[d]istrict courts have the discretion to stay or dismiss a pending suit when confronted with parallel litigation of factually related cases filed in two separate forums."  *Furniture Brands Int'l,*

*Inc. v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 3–4 (D.D.C. 2011) (citing *Handy v. Shaw*, 325 F.3d 346, 349 (D.C. Cir. 2003)).

Here, the Court is persuaded that it should dismiss Plaintiff's ABCMR claim in light of the pending case before the Court of Federal Claims raising essentially the same claim.  In his complaint in that separate case, Plaintiff recounts his understanding of the events that led to the ABCMR decision to reconsider his eligibility for military disability retirement.  Dkt. 1 at 3–5 (Compl. ¶ 8), *Prewitt v. United States*, No. 22-1673 (Fed. Cl. Nov. 9, 2022).  He alleges that as part of that reconsideration process, his claim was referred to a "representative for the Officer of the Surgeon General," *id.* at 5 (Compl. ¶ 8(c)), and he asks the Court of Federal Claims to find that the Surgeon General's findings were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because [the representative's] findings albeit accepted by the ABCMR are glaringly contradicted by the available medical documentation," *id.* at 14 (Compl. ¶ 22).  He further asks that the Court of Federal Claims set aside the ABCMR's decision and that a $50 fine that he incurred in 1969 be refunded with interest.  *Id.* (Compl. ¶ 22).

In this suit, Plaintiff acknowledges that the ABCMR reviewed its past decision regarding his eligibility for military disability retirement, Dkt. 18 at 7 (Am. Compl. ¶ 11), but he claims that the ABCMR's review process and subsequent decision were flawed, *id.* at 8–10 (Am. Compl. ¶¶ 14–16); *see also id*. at 8 (Am. Compl. ¶ 13) (acknowledging Prewitt's suit before the Court of Federal Claims).  He then "asks this [C]ourt for equitable relief, regarding the decision of the ABCMR under the Administrative Procedure Act," *id.* at 19 (Am. Compl. ¶ 38), and in particular, that "this [C]ourt find that the ABCMR decision at issue is contrary to law[] and warrants reversal," *id.* at 18 (Am. Compl. ¶ 35).

The claims that Plaintiff presses in this suit, accordingly, overlap to a considerable degree with the claims he presses before the Court of Federal Claims. It is true that in his Court of Federal Claims case, Plaintiff seeks damages, which he does not seek in this case. But that difference does not help Plaintiff here because the relief he seeks in this case—an order vacating the ACBMR's decision—he also seeks from the Court of Federal Claims, and he has provided no reason why he cannot obtain that relief from that other federal court.

Moreover, Plaintiff's Court of Federal Claims case has, it seems, provided him with some of the relief he seeks. On April 25, 2023, that court granted the government's motion to remand so that the ABCMR could reconsider Prewitt's claims and so that Plaintiff could respond to the Surgeon General's determination that the Army had not erred in failing to consider Prewitt for military disability retirement. Memorandum Opinion and Order, Dkt. 28 at 3–4, *Prewitt v. United States*, No. 22-1673 (Fed. Cl. Apr. 25, 2023). On December 1, 2023, the government informed that court that "[t]he Army has corrected Mr. Prewitt's discharge records as of November 27, 2023, to show he was retired for permanent disability effective March 11, 1970." Defendant's Status Report, Dkt. 50 at 1, *Prewitt v. United States*, No. 22-1673 (Fed. Cl. Dec. 1, 2023). Unfortunately, both parties acknowledge that the "corrected" records may contain new errors, but briefing on that subject is already substantially underway before the Court of Federal Claims. *Id.*; Plaintiff's Response to Defendant's 12/22/2023 Status Report, Dkt. 55, *Prewitt v. United States*, No. 22-1673 (Fed. Cl. Jan. 5, 2024); Plaintiff's Partial Motion for Summary Judgment, Dkt. 52, *Prewitt v. United States*, No. 22-1673 (Fed. Cl. Dec. 8, 2023); Scheduling Order, Dkt. 72, *Prewitt v. United States*, No. 22-1673 (Fed. Cl. March 25, 2024). Finally, on June 25, 2024, the Federal Circuit rejected Plaintiff's petition for a writ of mandamus, which

sought to compel the Court of Federal Claims to enter an "appealable order." *In re Prewitt*, No.

24-110, 2024 WL 3159409 (Fed. Cir. June 25, 2024). As the Federal Circuit explained:

> Following the Board's decision, the parties attempted to resolve various issues, including the calculation of benefits and necessary paperwork for Mr. Prewitt to receive benefits, but hit a stalemate. Mr. Prewitt subsequently moved for judgment on the record seeking a higher disability rating, and the government filed a cross-motion for judgment on the record asking the Court of Federal Claims to find that substantial evidence supports the Board's decision and to dismiss the remainder of the complaint. Those motions remain pending before the trial court.

*Id.* at *1.

In light of these events in Plaintiff's Court of Federal Claims case and in the interests of

judicial economy, *see Columbia*, 525 F.2d at 626 ("Sound judicial administration counsels

against separate proceedings, and the wasteful expenditure of energy and money incidental to

separate litigation of identical issues should be avoided."), the Court concludes that is its

appropriate (1) to permit the Court of Federal Claims to resolve Prewitt's ABCMR claim and (2)

to dismiss his parallel claim in this case.

Accordingly, the Court will dismiss Plaintiff's fifth and final claim, which challenges the

ACMBR's decision to find him ineligible for military disability retirement.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt.

23. A separate order will issue

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 7, 2025